May it please the Court, I would like to reserve three minutes at the end for rebuttal. I'm here today on behalf of my clients, Marcus Silving and Deborah Bader. In January of 2011, their home was taken from them in violation of the terms of the note and of the deed of trust, and through the application of foreclosure documents, which are void under the law. In order to understand this, the critical documents to analyze are the note and the deed of trust. The terms of those documents themselves make it very clear that the lender must take all of the relevant actions with respect to any declared default. Only the lender under the note, only the lender is entitled to payment. Only the lender can write to the borrower and declare a default. Only the lender can enforce the note, and only the lender is secured by the deed of trust. And the deed of trust has similar provisions. It secures only to the lender repayment under the note. The lender must be the one to notify the borrower of a breach. The lender must accelerate. The lender must invoke the power of sale. And the lender must be the one to write to the trustee under the deed of trust, declare a default. So you're basically making a show-me-the-note argument? No, Your Honor, I'm not. You did in your papers. No, the argument is different from show-me-the-note. The argument is the variance, but it's really show-me-the-note, isn't it? No, the argument is a enforce-the-contract argument is what it is. Oh, okay. The note defines the note holder and lender. So in order to determine who is able to do any of these actions, obtain payments, declare default, you have to determine who the note holder is in this case. The note holder is defined by the note. Now, the note holder is not the same as under the Uniform Commercial Code, and that's a misunderstanding that I think may be occurring here. The note defines note holder as the lender or anyone who takes the note by transfer and who is entitled to payments under the note. It's not a, if you have the note, you win. It's a, you have to demonstrate that you obtained the note by transfer from the lender and that you're entitled to payments. And that's a clear term in the promissory note itself. This has nothing having to do with the Uniform Commercial Code. So those are the things that have to be done in order to determine who is able to do any of these actions. How do you distinguish your case from the many cases cited by opposing counsel that have dealt with these MERS arguments and the note arguments here in the Ninth  What makes this case different? This is, this case is different because none of those cases are based on the terms of the contracts, and each one of those cases did not make allegations that I made on behalf of my clients in our matter, in particular, that the trustee must have obtained the writing from the lender. Now, we clearly alleged over and over again in our review that the trustee must have obtained the writing from the lender. I'm sorry? Must obtain the note? Would you say, you said must obtain a writing? A writing, yes. So what is that writing, the note? No. The trustee under the deed of trust must obtain in writing from the lender, there's been a default, I choose to foreclose. And what happened here? What happened here is that the trustee, the foreclosure trustee, obtained information from somewhere, but the foreclosure trustee indicated in the paperwork that it filed, that it thought that ASC, America's Servicing Company, was the beneficiary. It was not. It was never. At best, it was a servicer. So what happened here under the pleadings, and this is on a motion to dismiss, so the well-pled allegations must be accepted as true, they did not receive the writing from the lender, which is the only way that a foreclosure can legally be initiated under the note and the deed of trust. It was never received. What about the standing issue here? Standing with reference to being able to argue that the documents are void? Well, with respect to the PSA, there have been a lot of cases on standing. With respect to the PSA? Your opposing counsel alleges you don't have standing. Yes. Okay. With respect to the PSA, there have been some recent cases. The Arabobo case, I filed two citations of supplemental authority at document 37 and 57. There are very recent cases that demonstrate that borrowers do have the ability to argue that if the loan never went into the trust before the trust closed, any purported transfer is void. If the transfer is void, obviously the entities that claim they obtained the loan through the assignment cannot foreclose, and that would render this foreclosure a void sale, which must be reversed. Also, the Glaske case recently issued out of California confirms the same. And the Arabobo case is a New York case, and this trust is a New York trust governed by New York. And the New York statute clearly indicates that you can't transfer anything into the trust once it is closed. So what relief are you seeking? I'm sorry? What relief are you seeking? I'm seeking a reversal of the dismissal of the cause of action. I'm also seeking a determination that the sale was void, that it needs to be unwound, and return to the State court to litigate our claims. So you want the district court to undo the foreclosure? Yes. The foreclosure sale was invalid, clearly. That took place in State court. I'm sorry? That took place in State court. What did? The foreclosure. The foreclosure. It's a nonjudicial foreclosure. I understand, but it was under the auspices. And then it was litigated in State court. You started to litigate this in State court, did you not? Yes, exactly. And it was reversed. Judge Mayaz is asking you, are you asking the district, Federal district court, to in essence undo what was done in State court? Well, the State court didn't have an opportunity to do anything. But what I am seeking is a reversal of the sale, whether this court can so order or whether the Federal district court, Judge Campbell, can do that. Most definitely that's what I'm seeking, because the sale was conducted without satisfying the conditions precedent required by the note and deed of trust. Has the house been sold again? No, Your Honor. In fact, my clients are still residing in the home. Are they paying into a secure or into an escrow account in the district? During the pendency of the district court matter, they were paying a monthly payment into my trust account. During the pendency of the eviction matter, they were paying a monthly bond payment into the superior court, and as far as I know, that's still going on. But, yes, they've been making security payments to the to in order that they may continue to reside there. They're still in the home. Okay. You want to save two minutes for rebuttal? Yes, please. Thank you. Good morning, Your Honors, and may it please the Court. I'm Andrew Jacobs for the defendants' appellees other than First American Title Corporation, separately represented here. This would have been a much easier case had it been decided even a few months earlier or a few months later, rather, because Arizona law was significantly expanded upon by the Arizona Supreme Court only three months after Judge Campbell issued the summary judgment when the Arizona Supreme Court weighed in in the BT Capital case and clarified that under ARS 33-811 that you simply can't unring the bell after the fact in the manner that Bader as the plaintiff would choose to do in this case. Under 33-811, as Justice Bales wrote in BT Capital, there is simply one avenue to trying to accomplish what Bader Silving sought to accomplish in this case, which is the pre-suit injunction, and that was alluded to in counsel's original presentation when she said that the State court never had a chance to do anything with this. And the reason for that is because Bader Silving did not. I thought in this case that the foreclosure sale had been continued and continued and continued. Is that right? I believe 16 times, Your Honor. Sixteen times. And I thought the allegation was, or I read someplace, that she only got notice 24 hours before the sale, that the sale was going to take place. And I thought there was – there's a serious question whether that's sufficient time for somebody to get into superior court and to get an injunction. The – I'm not familiar with the 24-hour piece of it, Your Honor. I believe that they say that they were lulled as a general matter. I know they say that many, many times. We didn't think that you would foreclose because you gave us continuations previously, but the pendency of the trustee sale and the noncontinuation of the trustee sale constitutes a pending form of relief over you. And that's why there's the 30-day period. There's no dispute here that they had the 30-day notice in advance of the sale that eventually occurred. And that's what, under Arizona law, gives you that alarm bell that says I have to go to court to seek it. You can't notice a sale on one day's notice. The statutory scheme which was complied with was 30. My understanding was once – if you continue the sale, you give the 30-day notice and you say the sale is going to be on the next day. Two days before that, everybody agrees to postpone the sale. You don't have to give another 30 days. You can agree on a delay. But you can agree on a delay. That's exactly correct, Your Honor. But the degree of delay that you agree to. The foreclosure, whoever is doing the foreclosing can continue the sale as well. You can agree on a delay of whatever duration. So if you agree on an extension of a couple of days. How is it that the sale was continued 16 times? It was continued a number of times because there was this continuing communication of, you know, would you like to have a refinance on the following terms? And there was not an agreement made. They want a refinance on the terms which they want. And they never obtained a refinancing on the terms which they wanted. They, therefore, never agreed to one. And there was this sort of pinging back and forth between an institution and a homeowner and eventually a foreclosure. So when was it finally decided that – I forget the date that the foreclosure actually took place, the sale, the sale actually took place. Who, when and how was that decided? There will be no further continuances. You know, I don't, Your Honor, the pleading doesn't answer that question, which is my record for purposes of that inquiry. It's not something I've discussed separately out of record with the client. But typically in these matters, when I've otherwise represented banks, it's simply a case of at some point, after some number of attempts to work through and communicate, you eventually get to the point where you follow through with your properly noticed remedy, as occurred here. Why don't we assume that the waiver doesn't apply? What happens next? Assume that 811 doesn't apply, Your Honor? Right. If 811 doesn't apply, you still have all these, and I think the district court, because it didn't have the benefit of BT Capital, explained very well the answer to that question. There are all these, you know, 11 different claims which are asserted, which are all different species of I have standing to complain about documentation defects in documents to which I'm not a party, which is the whole prudential standing issue that Your Honor has just alluded to moments ago that's broken out nicely in the Michigan Livonia case. It's broken out well in Judge Teelborg's In re Mer's case that Judge Campbell also cites. And Arizona law is very well settled on this point after the Supreme Court decision in Hogan that also emerged in 2012, a decision that says there's no show-me-the-note in Arizona and we're very serious about that. It says we're not going to look backward and unwind these things and you don't have the standing to do it. Otherwise, it would unleash the floodgates. Their supplemental authority, they cite, underscores that point, Your Honors, because they cite the Stauffer case. I'm the one who filed the petition for review in the Stauffer case, you know, so we know that case is out there. But Stauffer did it before the sale. The sale never occurred. The sale was canceled because Stauffer properly exercised remedies beforehand or at least sought to. And so that remained in dispute. It's just too onerous under the Arizona system. And the Arizona law wisely prevents us from incurring the massive transaction cost of saying did someone state a claim for breach of contract when they had notice for months in advance of a trustee sale. It seems like the banks are caught in a little bit of a catch-20. I don't hold the brief for the banks, but if they immediately foreclose on somebody then they're regarded as harsh and brutal and not giving them an opportunity to refinance. But then if they continue it 16 times, they're lulling them and in some way acquiescing to kind of perpetually continue it. So I don't know what the banks do in a situation like that. It would be bad law for borrowers, for a court to issue a decision that says, you know, you continue the borrower too many times, you've lulled them, so your contractual rights are undone. There would be no better way to ensure rapid foreclosures without mercy from banks than to issue such a decision. So just a couple of points briefly, Your Honors, then responding specifically to those raised by counsel in counsel's presentation. Judge Campbell was very clear that as to the question of the identity of beneficiaries, that under ARS it was Section 8083 that errors as to the beneficiary don't necessarily vitiate acts that are properly undertaken by the actual beneficiary. And here we see the proper operation of MERS. MERS has a very broad charge in page 3 of the Deed of Trust to operate with all of the rights that the lender exercises. And this argument that there's some covenant in favor of the borrower, that the lender has to individually, sort of personally, if you will, do everything, is really not a reasonable, it's a very tendentious reading of the note, which would not make good law or policy either, when you consider that it would read servicers wholly out of the equation. I mean, a bank couldn't do anything through a servicer under that reading of the note. That can't possibly be what the note means. Unless Your Honors have additional questions I could address, I believe that's really all. Kennedy. I have a question. If I could ask you one question. Is a servicer of the loan in the position of an agent of the lender, or are they in a contractual relationship? Or is it both? I believe it's both, Your Honor. Those relationships are typically created by contract, but there's no question in the law that that is an agency relationship, Your Honor. Absolutely so, and would be in this case. And is there any precedent that says a lender cannot act through an agent? Not that I'm aware of, Your Honor, and I think it's necessary for the proper function of commerce for businesses and lenders to be able to utilize agents appropriately as occurs with MERS and as occurs with the servicers, and it's acknowledged that there were servicers in this record. Clearly, they must be agents. Okay. Thank you. There were a couple of tort claims, negligence per se, Good Samaritan. How does the waiver rule apply to those? The waiver rule that Your Honor alludes to applies foursquare here because there was the further case that came out after the BT Capital case out of Division I in Phoenix, which was Madison v. Groseth, and that was a case right after BT where the Arizona Court of Appeals had to consider, but what about tort claims which are essentially derivative of the borrower's complaints about the sale? And there, those claims were, I think, a wrongful sale claim, and there was also a trespass claim, and there, the Division I Court of Appeals in Phoenix said, under BT Capital, there can be no question that those tort claims do not lie here and they cannot be sustained. And that was where also, in kind of a show-me-the-note turn, the plaintiff in Madison v. Groseth said, but you didn't really demonstrate that you mailed me the notice. You haven't given me that paper documentation. Nonetheless, the waiver rule Your Honor alludes to was applied properly, as it should be here. Okay. Okay. Thank you, Your Honors. May it please the Court. Scott Malm of Gust Rosenfeld. Yes. You have about a minute. First American. Yes, Your Honor. I wanted to go to that notice question. That is under 33-810B in terms of the statute specifically says you do not have to give another public notice in writing of any sort, but you do have to make a public announcement at the sale and you have to be available to give information any time a question is raised as to when is the next sale. So it was no allegation that that information wasn't made available. So the idea that they didn't have notice just isn't supported by any of their allegations there. First American is the substitute trustee here, so I just want to point out. Let me see if I get this correct. I think I remember this from my days when I used to sit in the county courthouse in Los Angeles, that when there was a – every morning there was a foreclosure trustee sale. And they would stand up and read a list of sales, and every now and then they would say this is continued to another date. That's exactly the process. Is that right? That is correct. Plus, they have to make themselves available to answer any questions for someone calling three days before to say when's the next sale date. It's X. And then if they go to the public sale on that date and they publicly announce it's going to be continued for 30 days, then they have to answer any questions that are made to them or requests during that next 30 days to give them the date that has now been set. And is that the process that's followed in Arizona? That's the process because that's the statute. Yes. So that is the statutory requirement, and there's no allegation that that wasn't followed in this case. But again, going back to the 33811C, it sounds draconian to some to say if you don't come into court and stop the sale, you've waived all your claims and defenses. But really, if you step back and look at it, all the legislature has done is defined what a ratification would look like. If you step out into a regular contract-type dispute and you ratify the contract, that then would be a waiver of any of the underlying or related tort-type claims that might flow from that action. What the legislature has said here is if you have noticed or if there's a sale that has been publicly noticed and you don't stop it, you've waived any of those defenses. And there's good public policy reasons for my client, the title company, to be able to know that when that sale happens, subsequent sales can be insured and the title can be continued for the economy. Thank you. Any questions for me? Thank you, Your Honors. There are about two minutes for rebuttal. Ms. Ford? Counsel, I'd like to ask you a question, and maybe I could talk Judge Pison to giving you an extra minute so you have time to answer my question. So I have the same question for you that I had for your opponent, and that is, is there anything in the law that says a lender cannot work through agents? And these servicing companies, are they agents of the lender? Not for purposes of the terms of the note in deed of trust that I highlighted for you, Your Honor, previously. And there's a perfect example of this in the deed of trust itself, Your Honor, because both of the documents are filled with requirements. The lender must do this. The lender shall do this. The lender is secured. Well, I understand that, and I read in your briefing, and there are some places where it says, maybe says a lender and an agent explicitly, but there are other places where it just says the lender. But even if it just says the lender, why can't that be the lender through an agent? It cannot, Your Honor, because these the law, the contracts, and the deeds of trust must, in this instance, be strictly construed in favor of the borrower at all times. The deed of trust statutes strip the borrowers of almost all of their protections. And this is something that must be interpreted strictly in favor of borrowers in order to protect their interests. That's what I'm having trouble understanding. Like if I contracted with you and said I will deliver a pound of gold to you on a certain date and I send a messenger with a pound of gold, use my agent to deliver it, it doesn't really hurt your rights. So why is the homeowner different? Why do they need these actions done by the lender itself rather than the agent of the lender? Because the law says that everything must be strictly construed in favor of the borrower. Your example, Your Honor, is inapposite because this is a completely different scenario. This is entities that are not the lender stepping in and taking people's homes without complying with the Fannie Mae, Freddie Mac forms that they chose to implement. They are required to follow these documents, Your Honor. And the law is very clear that there's a policy in Arizona against forfeiture of people's homes and for strict construction in favor of borrowers. And these documents require that the lender take these actions and they need to do so. I wanted to also say that you're welcome. I wanted to also talk about your concern about the temporary restraining order and getting only 24 hours' notice. Now, it's true, yes, that they had received notice previously, but first of all, not from the lender. And this practice of continuing the sale over and over and over again and leading the borrowers to believe that they were engaging in good faith settlement negotiations, modification negotiations, established a pattern and practice where what they would do is they would wait until the day of the sale and move it. So there's absolutely no way that a borrower would have the time that's required to step in and protect their interests once they realize that today we're not moving your sale and your house is gone. They had absolutely no way that they could go in and seek any assistance. They reasonably believed that these entities they were negotiating with would act in good faith. It would not have had to be perpetually continued as you expressed a concern, Your Honor. All they would have had to do is on that day say, this is the end of it. We're going to continue this sale one more time. You have 30 days and you're done. And that would have been adequate notice to give my clients the opportunity to step in and do something to protect their home. Okay. Thank you. Your time is over. Thank you. Thank you, counsel. We appreciate your arguments. I don't know if you're going back to Arizona, but have a safe trip. And the matter is submitted at this time.
judges: Ezra, Gould, Paez